USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/31/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
:
OVERNIGHT BLOWOUT LLC; :
and YESENIA HIPOLITO, :
:
                     Plaintiffs, :      25-cv-6086 (LJL)
:
     -v- :      MEMORANDUM &
:       ORDER
SHENZHEN KAIRUIJIA E-COMMERCE CO., LTD. :
D/B/A KAYOCO; ELLYA LLC A/K/A ELIYA LLC :
D/B/A MAVIANA STORE; XIAMEN HULI DISTRICT :
TINGXIANDI E-COMMERCE STORE D/B/A :
TINGEDIDIANZI; JINJIANG SHENGDAYUE :
TRADING CO., LTD. D/B/A SHENG DAYUE; :
BOBOL; CHEN JIAYAO; HI BEAUTY; HAIKOU :
LONGHUA YIFENG NETWORK TECHNOLOGY :
STUDIO D/B/A KMBI; YIWU YUHUAN JEWELRY :
SHOP D/B/A SHEEN&AN; HUIZHOU LINA COMB :
BRUSH CO., LTD. D/B/A YAYA TOOL; YIWU :
ZHENMENG JEWELRY CO., LTD. D/B/A YW :
ZHENGMENG; BAIHUIYUE ELECTRONIC :
TECHNOLOGY CO., LIMITED D/B/A EASTYRIVE; :
YONGXIN FAN ELECTRONIC TECHNOLOGY CO., :
LIMITED D/B/A ELECATBOAT; SHENZHEN FEIQI :
TECHNOLOGY CO., LTD. D/B/A FANCY BEAUTY :
US; SHENZHEN JINBENFENG TRADING CO., LTD. :
D/B/A GOCOIER; and XIANGCHENG MISI TRADING :
CO., LTD. D/B/A XC MISS, :
:
                     Defendants. :
----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Plaintiffs Overnight Blowout LLC and Yesenia Hipolito (collectively, "Plaintiffs") have moved *ex parte* for a temporary restraining order ("TRO"), an order authorizing alternative service, an order authorizing expedited discovery, and an order to show cause for a preliminary injunction against multiple e-commerce retailers ("Defendants") allegedly engaged in the counterfeiting of Plaintiffs' patented hair-accessory product, the Overnight Blowout Rod.  On

July 30, 2025, the Court issued the requested orders, including the TRO, with certain exceptions. This Memorandum and Order supplements those orders and serves to further explain the Court's reasons for authorizing alternative service by email as to only two of the defendants.

Plaintiffs seek an order authorizing alternative service by email on all defendants located in China or Hong Kong (the "Chinese Defendants"). This Court has previously held that service by email on defendants in China violates the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention")—to which both China and the United States are signatories—such that this method is "prohibited by international agreement" and therefore unavailable under Federal Rule of Civil Procedure 4(f)(3). *See Cawthorn v. Zhousunyijie*, 2024 WL 1156073, at *2 (S.D.N.Y. Mar. 18, 2024); *see also Smart Study Co., Ltd. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1393–97 (S.D.N.Y. 2022). The Court maintains that, at least as a general matter, service by email on defendants in China is not permitted under Rule 4(f)(3).

Plaintiffs offer two principal responses. First, Plaintiffs observe that the Hague Convention does not apply where a defendant's address is "unknown," and they contend that the Chinese Defendants' addresses here are unknown. The first proposition is certainly true; the second is less clearly so. Courts have long recognized that "[t]he Hague Convention does not apply 'where the address of the person to be served with the document is not known.'" *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, 2018 WL 4757939, at *4 (S.D.N.Y. Sept. 30, 2018) (quoting Hague Convention, art. 1); *see also Smart Study*, 620 F. Supp. 3d at 1390; *Cawthorn*, 2024 WL 1156073, at *7 n.4. In determining whether an address is "unknown" for purposes of the Convention, "[c]ourts in this Circuit . . . [ask whether] the plaintiff exercised reasonable diligence in attempting to discover a physical address for service

of process and was unsuccessful in doing so." *Smart Study*, 620 F. Supp. 3d at 1390–91 (quoting *Advanced Access Content*, 2018 WL 4757939, at *4).

Plaintiffs have ascertained addresses—at least purported ones—for all but two of the Chinese Defendants: BOBOL and Fancy Beauty US. The Court determines that Plaintiffs have demonstrated through reasonable diligence that addresses are "unknown" for BOBOL and Fancy Beauty US such that the Hague Convention does not apply to them. But for the remaining defendants, Plaintiffs have not yet demonstrated to the Court's satisfaction that the addresses are sufficiently "unknown." With respect to five of the defendants,[1] Plaintiffs assert that test mailings could not be successfully completed, as "couriers were unable to locate the Defendants on site to complete delivery or contact Defendants via telephone to receive further instructions." Declaration of Albert Tsui ¶ 11(a). That couriers were unable to locate Defendants on site during a single test mailing does not mean that the addresses are unknown such that service of process through traditional Hague Convention channels would be impossible. It is entirely possible, for example, that Defendants reside at those addresses but were not present, for whatever reason, when the couriers arrived. Likewise, Plaintiffs contend with respect to the six defendants for whom test mailings were successful[2] that "at most, [the mailings] . . . only confirm that the addresses associated with these Defendants . . . are actual addresses that can receive mail," and not that "Defendants in fact operate from or can be physically found at these addresses." *Id.* ¶ 12. But again, Plaintiffs' inability to conclusively verify these addresses using a single test mailing does not mean that the addresses are "unknown" for purposes of the Hague Convention. This conclusion could change, however, based on additional evidence

---

[1] Those defendants are TingEDidianzi, Sheng Dayue, KMBI, Sheen&An, and Gocoier.
[2] Those defendants are Kayoco, YAYA TOOL, YW Zhengmeng, eastyrive, elecatbaot, and XC Miss.

demonstrating that the addresses are fictitious. The Court's partial denial of Plaintiffs' request for alternative service is therefore made without prejudice to Plaintiffs' ability to renew their request at a later time.

With respect to the eleven defendants for whom at least some address is available, the Court turns to Plaintiffs' alternative response: Plaintiffs argue that even if the Hague Convention applies, Article 15 of the Convention permits alternative service by email in exigent circumstances, and those circumstances are present here. Although this position finds some support in the caselaw, the Court ultimately disagrees.

Article 15 outlines the circumstances in which a court may enter judgment notwithstanding a defendant's failure to appear:

> Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that
>
> > a) the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or
> >
> > b) the document was actually delivered to the defendant or to his residence by another method provided for by this Convention,
> >
> > and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.
>
> Each Contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this Article, may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled
>
> > a) the document was transmitted by one of the methods provided for in this Convention,
> >
> > b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,

4

> c) no certificate of any kind has been received, even though every
> reasonable effort has been made to obtain it through the competent
> authorities of the State addressed.
>
> Notwithstanding the provisions of the preceding paragraphs the judge may order,
> in case of urgency, any provisional or protective measures.

Hague Convention, art. 15.  Seizing on this final sentence, Plaintiffs argue that alternative service by email is a "provisional or protective measure" authorized in urgent circumstances, such as when a plaintiff is suffering irreparable harm due to a defendant's patent, copyright, or trademark infringements.  Some courts have agreed.  *See, e.g.*, *King Spider LLC v. 884886 CH Store*, 2024 WL 5145837, at *1 (S.D.N.Y. Dec. 17, 2024); *Spin Master Ltd. v. Aganv*, 2024 U.S. Dist. LEXIS 166526, at *9–10 (S.D.N.Y. Aug. 9, 2024); *see also Lonati, S.p.A. v. Soxnet, Inc.*, 2021 WL 9839476, at *3 (C.D. Cal. Sept. 20, 2021); *Footprint Int'l, LLC v. Footprint Asia Ltd.*, 2024 WL 1556347, at *3–5 (D. Ariz. Apr. 9, 2024).  Other courts have declined to authorize alternative service under Article 15 in analogous cases.  *See, e.g.*, *D Squared Plant Traps LLC v. Guangdong Bixing Trading Co., Ltd.*, 716 F. Supp. 3d 352, 357 (W.D. Pa. 2024); *Fellow Indus., Inc. v. Turlyn Int'l, Inc.*, 2023 WL 5239638, at *3 (N.D. Cal. Aug. 15, 2023).

The Court is unpersuaded that Article 15's urgency exception permits the relief Plaintiffs seek.  At bottom, alternative service by email under Rule 4(f)(3) is not a "provisional or protective measure."  Service is "more than notice to the defendant."  *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).  It is a formal "procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts [personal] jurisdiction over the person of the party served."  *Id.* (quoting *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444–45 (1946)).  Service thus authorizes outcomes that are decidedly final.  Indeed, under Plaintiffs' reading, a court may enter a permanent injunction or even default judgment based on a "provisional or protective" form of service.  *See Seiko Epson Corp. v. Dongguan Ocbestjet Digit.*

*Tech. Co., Ltd.*, 2023 WL 8254471, at *3–4 (C.D. Cal. Apr. 18, 2023) (authorizing default judgment under Article 15's urgency exception against defendants in China served by email). That reading undermines not only Article 15, which carefully outlines the circumstances under which a court may enter judgment (and which does not include judgment following alternative service), but also the Hague Convention more generally, which the Supreme Court has said is designed principally to "specif[y] certain approved methods of service and 'pre-empt[] inconsistent methods of service.'" *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988)). Permitting whatever form of service a court deems appropriate whenever there is an "urgency" fundamentally subverts the Convention and its overarching purpose of specifying certain approved methods of service and preempting others.

Article 15 is instead better read to authorize relief such as temporary restraining orders or preliminary injunctions, which are quintessential "provisional or protective measures." Unlike alternative service, these measures are designed precisely for the purpose of providing interim relief. *See* 13 Moore's Federal Practice § 65.20 (3d ed. 2025) ("The purpose of the preliminary injunction is to preserve the status quo between the parties pending a final determination of the merits of the action."). Additionally, under Federal Rule of Civil Procedure 65(a), preliminary injunctions require only "notice"—as opposed to formal Rule 4 "service"—to the party against whom relief is sought. Fed. R. Civ. P. 65(a). "[D]etermination of the adequacy of [Rule 65(a)] notice falls within the exercise of the district court's sound discretion." *See* 13 Moore's Federal Practice § 65.21[2] (3d ed. 2025). Thus, although a plaintiff cannot obtain final relief until complying with the Convention's proscribed methods of service, *see* Hague Convention, art. 15, it may still be able to restrain defendants and freeze their assets by providing notice in a manner

that requires substantially less than what service under the Convention requires. Here, for example, the Court finds that Plaintiffs will successfully discharge their Rule 65(a) notice obligations by emailing Defendants the TRO, Order to Show Cause, and Complaint—in other words, by doing what Plaintiffs had hoped would suffice for service under Rule 4(f)(3). Importantly, once a TRO or preliminary injunction issues, the "urgency" Plaintiffs cite as the reason for authorizing alternative service dissipates, at least in large part.[3]

The Court accordingly holds that service under the Hague Convention is required on all Defendants for whom Plaintiffs have at least some address, unless and until Plaintiffs can show that these addresses are not in fact "known."

SO ORDERED.

Dated: July 31, 2025
New York, New York

_____
LEWIS J. LIMAN
United States District Judge

---

[3] The Court's reading of Article 15 is not altered by the 1993 Advisory Committee Notes to Rule 4, which state that the "Hague Convention . . . authorizes special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstances." Fed. R. Civ. P. 4(f)(3) advisory committee's note to 1993 amendment. Although the Committee Notes may "provide a reliable source of insight into the meaning of a rule," *United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002), that does not mean they provide a reliable source of insight into the meaning of international law. And, as explained above, the Court believes that the best reading of Article 15, and of the Convention as a whole, is that a court may not issue permanent injunctive relief or a default judgment against defendants in China based on service by email.