UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OVERNIGHT BLOWOUT LLC; YESENIA HIPOLITO<br><br>Plaintiffs,<br><br>v.<br><br>SHENZHEN KAIRUIJIA E-COMMERCE CO., LTD. D/B/A KAYOCO; ELLYA LLC A/K/A ELIYA LLC D/B/A MAVIANA STORE; XIAMEN HULI DISTRICT TINGXIANDI E-COMMERCE STORE D/B/A TINGEDIDIANZI; JINJIANG SHENGDAYUE TRADING CO., LTD. D/B/A SHENG DAYUE; BOBOL; CHEN JIAYAO; HI BEAUTY; HAIKOU LONGHUA YIFENG NETWORK TECHNOLOGY STUDIO D/B/A KMBI; YIWU YUHUAN JEWELRY SHOP D/B/A SHEEN&AN; HUIZHOU LINA COMB BRUSH CO., LTD. D/B/A YAYA TOOL; YIWU ZHENMENG JEWELRY CO., LTD. D/B/A YW ZHENGMENG; BAIHUIYUE ELECTRONIC TECHNOLOGY CO., LIMITED D/B/A EASTYRIVE; YONGXIN FAN ELECTRONIC TECHNOLOGY CO., LIMITED D/B/A ELECATBOAT; SHENZHEN FEIQI TECHNOLOGY CO., LTD. D/B/A FANCY BEAUTY US; SHENZHEN JINBENFENG TRADING CO., LTD. D/B/A GOCOIER; and XIANGCHENG MISI TRADING CO., LTD. D/B/A XC MISS,<br><br>Defendants. | Case No. 25-cv-6086 |

**PRELIMINARY INJUNCTION**

1

Plaintiffs Overnight Blowout LLC ("Overnight Blowout") and Yesenia Hipolito ("Hipolito") (collectively, "Plaintiffs") have moved against Shenzhen Kairuijia E-Commerce Co., Ltd. d/b/a Kayoco ("Kayoco"); Ellya LLC a/k/a Eliya LLC d/b/a MAVIANA Store ("MAVIANA Store"); Xiamen Huli District Tingxiandi E-commerce Store d/b/a TingEDidianzi ("TingEDidianzi"); Jinjiang Shengdayue Trading Co., Ltd. d/b/a Sheng Dayue ("Sheng Dayue"); BOBOL; Chen Jiayao; Hi Beauty; Haikou Longhua Yifeng Network Technology Studio d/b/a KMBI ("KMBI"); Yiwu Yuhuan Jewelry Shop d/b/a Sheen&An ("Sheen&An"); Huizhou Lina Comb Brush Co., Ltd. d/b/a YAYA TOOL ("YAYA TOOL"); Yiwu Zhenmeng Jewelry Co., Ltd. d/b/a YW Zhengmeng ("YW Zhengmeng"); Baihuiyue Electronic Technology Co., Limited d/b/a eastyrive ("eastyrive"); Yongxin Fan electronic Technology Co., Limited d/b/a elecatboat ("elecatboat"); Shenzhen Feiqi Technology Co., Ltd. d/b/a Fancy Beauty US ("Fancy Beauty US"); Shenzhen Jinbenfeng Trading Co., Ltd. d/b/a Gocoier ("Gocoier"); and Xiangcheng Misi Trading Co., Ltd. d/b/a XC Miss ("XC Miss") (collectively, "Defendants") for, among other things, a temporary restraining order ("TRO") and an order to show cause for a preliminary injunction pursuant to Federal Rules of Civil Procedure 64 and 65, the Copyright Act, 17 U.S.C. § 502, the Lanham Act, 15 U.S.C. § 1117, the Patent Act, 35 U.S.C. § 283, Cal. Civ. Code § 3422, and N.Y. C.P.L.R. § 6212.

On July 30, 2025, the Court entered a TRO and an order to show cause. Dkt. No. 21. At a hearing on August 13, 2025, the Court extended the TRO for an additional fourteen days until August 27, 2025, at 5:00 PM. Dkt. No. 26. On August 26, 2025, the Court held a show-cause hearing and converted the TRO into a preliminary injunction. This Order memorializes the Court's findings of fact and conclusions of law supporting issuance of the Preliminary Injunction. The Court, having reviewed the Complaint, memorandum of law, supporting

Declarations and exhibits submitted herewith, makes the following findings of fact based on the proffered evidence and the following conclusions of law:

1.  Plaintiff Overnight Blowout owns exclusive trademark rights in the OVERNIGHT BLOWOUT trademark (Registration No. 7828812) (the "OVERNIGHT BLOWOUT Mark"), the registered design patent (No. D1,029,387 S) (the "387 Patent") covering the ornamental design for a "bendable hair rod with clasp" (the "OVERNIGHT BLOWOUT Rods"), and the copyrighted works U.S. Copyright Registration Nos. PA 2-479-850, PA 2-479-851, PA 2-491-940, PA 2-491-941, and VA 2-414-978 (the "OVERNIGHT BLOWOUT Copyrights"). The OVERNIGHT BLOWOUT Mark, '387 Patent, and OVERNIGHT BLOWOUT Copyrights are valid, and in full force and effect;

2.  Plaintiff Hipolito is a California domiciliary, and holds exclusive rights to her image and likeness pursuant to California common law and Cal. Civ. Code § 3344;

3.  Defendants are merchants operating storefronts on online marketplace platforms including Amazon.com, Shein.com, and TikTok.com (collectively, the "Online Storefronts"), through which they import, advertise, offer to sell, sell, and distribute unauthorized, wholesale reproductions of the OVERNIGHT BLOWOUT Rods, utilizing Plaintiffs' own marketing to promote their products (the "Infringing Products"), including images of Plaintiff Hipolito and other influencer affiliates demonstrating the use of genuine OVERNIGHT BLOWOUT Rods. These Infringing Products are designed to be substantially identical, if not completely identical, to the design set forth in the '387 Patent, in order to deceive consumers into believing that Defendants' Infringing Products are the same as Plaintiffs' genuine OVERNIGHT BLOWOUT Rods. Defendants are not (and have never been) authorized retailers of genuine OVERNIGHT BLOWOUT Rods, and are not authorized to use Overnight Blowout's intellectual property,

Hipolito's image and likeness, or, on information and belief, the images and likenesses of any of the other influencer affiliates who have promoted the genuine OVERNIGHT BLOWOUT Rods;

4. Based on the proffered evidence, Plaintiffs are likely to succeed in showing that Defendants (i) have infringed and are continuing to infringe Plaintiff Overnight Blowout's exclusive rights in the OVERNIGHT BLOWOUT Mark, the '387 Patent, and the OVERNIGHT BLOWOUT Copyrights; (ii) have engaged in false advertising; and (iii) have violated and are continuing to violate Plaintiff Hipolito's right of publicity. Defendants' unlawful conduct has taken place in connection with Defendants' importation, distribution, promotion, offering for sale and/or sale of products that infringe upon Plaintiffs' intellectual property rights and right of publicity, including via the Online Storefronts;

5. The continued importation, distribution, promotion, offering for sale, and/or sale of the Infringing Products will result in immediate and irreparable injury to Plaintiffs if the requested relief is not granted;

6. The harm to Plaintiffs from denial of the requested order far outweighs the harm to Defendants' legitimate interests against granting such order;

7. The public interest favors issuance of the temporary restraining order to protect Plaintiffs' legitimate intellectual property interests and protect the public from being defrauded by the palming off of infringing goods as Plaintiff's genuine goods;

8. Plaintiffs may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' importation, distribution, promotion, offering for sale, and/or sale of the Infringing Products. *Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 132 (2d Cir. 2014);

9. Requesting equitable relief invokes the district court's inherent equitable powers to order preliminary relief, in order to assure the availability of permanent relief. *Id.;*

THEREFORE, IT IS HEREBY ORDERED, in accordance with Rules 64 and 65 of the Federal Rules of Civil Procedure, the Copyright Act, 17 U.S.C. § 502, the Lanham Act, 15 U.S.C. § 1117, the Patent Act, 35 U.S.C. § 283, California Civil Procedure § 3422, N.Y. C.P.L.R. § 6212, and the Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief, and no prior application having been granted, that:

1. Defendants, their officers, directors, agents, servants, representatives, employees, successors, and assigns, and all those acting in concert or in participation with any of them, are enjoined from:

   a. Manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring products that directly or indirectly infringe upon the OVERNIGHT BLOWOUT Mark, the '387 Patent, the OVERNIGHT BLOWOUT Copyrights, which directly or indirectly violate Hipolito's right of publicity;

   b. Enabling, facilitating, permitting, assisting, soliciting, encouraging or inducing others to manufacture, import, advertise, promote, offer to sell, sell, distribute, or transfer products which directly or indirectly infringe upon the OVERNIGHT BLOWOUT Mark, the '387 Patent, the OVERNIGHT BLOWOUT Copyrights, directly or indirectly violate Hipolito's right of publicity, or directly or indirectly imply a false endorsement or promotion of Defendants' product by Hipolito or any other model who has not endorsed or promoted Defendants' product;

   c. Passing off, inducing, or enabling others to sell or pass off any produce as a genuine OVERNIGHT BLOWOUT product that is not, in fact, Plaintiffs'

    OVERNIGHT BLOWOUT Product and/or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under the OVERNIGHT BLOWOUT Mark or the '387 Patent;

  d. Committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control or supervision of Plaintiffs, or are sponsored by, approved by, endorsed by, or otherwise connected with Plaintiffs; and

  e. Operating and/or hosting websites and/or any other web presence or online storefront registered or operated by Defendants that are involved solely with the distribution, marketing, advertising, offering for sale, or sale of any product embodying or bearing OVERNIGHT BLOWOUT Mark, the '387 Patent, or the OVERNIGHT BLOWOUT Copyrights.

 2. Defendants, their officers, directors, agents, servants, representatives, employees, successors, and assigns, and all those acting in concert or in participation with any of them, shall immediately discontinue the use of the OVERNIGHT BLOWOUT Mark, the '387 Patent, the OVERNIGHT BLOWOUT Copyrights, or Hipolito's name, voice, signature, image, photograph, or likeness, and will immediately discontinue creating a false impression that Hipolito or any other model not affiliated with Defendants is endorsing Defendants, on or in connection with any and all Internet based e-commerce storefronts owned and operated, or controlled by them, including the Online Storefronts.

 3. Defendants, their officers, directors, agents, servants, representatives, employees, successors, and assigns, and all those acting in concert or in participation with any of them, as well as any third-party financial institutions, payment processors, banks, escrow services, money

transmitters, web hosts, registrars, or marketplace platforms that are providing services for any of the Defendants, including but not limited to Amazon.com, Walmart.com, Alibaba.com, AliExpress.com, TikTok.com, Shein.com, Shopify, PayPal, Stripe, Klarna, Apple Pay, Venmo, Google Pay, Google Sites, and their related companies and affiliates (the "E-Commerce Platforms"), shall, upon receiving actual notice of this Preliminary Injunction, immediately locate all accounts connected to any of Defendants' Online Storefronts ("Defendants' Accounts") and immediately cease transferring or disposing of any money or other assets residing in Defendants' Accounts, cease allowing such funds to be transferred or withdrawn, and cease allowing any diminutions to be made from Defendants' Accounts pending further order of this Court. This includes but is not limited to: (a) any and all of Defendants' Accounts with Amazon.com, Shein.com, or TikTok.com; and (b) any financial institution accounts linked to Defendants' Accounts or that otherwise have received payments for purchases from Defendants' Online Storefronts.

4. This Preliminary Injunction is issued without prejudice to Defendants' ability to seek either to vacate or to modify the injunction at a later time.

5. Plaintiffs shall serve a copy of this Preliminary Injunction on the E-Commerce Platforms and on Defendants via email as ordered in the TRO. Such service will constitute sufficient notice for purposes of Federal Rule of Civil Procedure 65(a)(1).

SO ORDERED this 27th day of August, 2025

_____
LEWIS J. LIMAN
United States District Judge